UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ALZHEIMER'S FOUNDATION OF AMERICA,
INC., d/b/a ALZHEIMER'S FOUNDATION,

                 Plaintiff,

  - against -

ALZHEIMER'S DISEASE AND RELATED
DISORDERS ASSOCIATION, INC. and
NORTHERN TRUST COMPANY,

                Defendants.

------------------------------------X

10 Civ. 3314 (RWS)

OPINION



A P P E A R A N C E S:

    Attorneys for the Plaintiff

    MILLER & WRUBEL P.C.
    570 Lexington Avenue
    New York, NY 10022
    By:  Martin D. Edel, Esq.
         Kerrin T. Klein, Esq.

    THE INGBER LAW FIRM
    374 Millburn Avenue, Suite 301
    Millburn, NJ 07041
    By:  Mark J. Ingber, Esq.

    Attorneys for the Defendants

    BAKER & MCKENZIE LLP
    452 Fifth Avenue
    New York, NY 10018
    By:   John Basinger, Esq.

**Sweet, D.J.**

Plaintiff Alzheimer's Foundation of America, Inc. ("Plaintiff" or the "Foundation") has moved for reconsideration of this Court's March 14, 2014 Decision and Order (the "March 14 Opinion") and relief from the judgment dismissing Count IX of the Fourth Amended Complaint ("FAC") for lack of standing in favor of defendant and counterclaim plaintiff Alzheimer's Disease and Related Disorders Association, Inc. ("Defendant" or the "Association").

Upon reconsideration of the application of <u>Barclays Bank</u> to a claim by a purported named payee against a non-payee depositor of the funds in question, the Plaintiff's motion for reconsideration is granted. Based on the conclusions set forth below, Plaintiff's request for relief from the judgment of dismissal is denied.

**Background and Prior Proceedings**

The facts and prior proceedings in this action are set forth in two prior decisions and orders of this Court dated May 25, 2011 and March 14, 2014, familiarity with which is

1

assumed. (See Dkt. Nos. 33, 170) The Court's March 14 Opinion held that the Foundation lacked standing to assert Count IX of the FAC which stated a claim for "money had and received" because the Foundation was never in possession of the checks at issue.

The instant motion was filed on April 4, 2014 and was marked fully submitted on May 14, 2014.

**Applicable Standard**

A court may grant reconsideration where the moving party demonstrates an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Henderson v. Metro. Bank & Trust Co., 502 F. Supp. 2d 372, 375-76 (S.D.N.Y. 2007) (quotation marks and citations omitted); See also Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003). However, reconsideration of a court's prior order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012) (citations omitted). Accordingly, the standard of review applicable to such a motion is "strict." Shrader v. CSX Transp., Inc., 70

2

F.3d 255, 257 (2d Cir. 1995).

Motions for reconsideration "are not vehicles for taking a second bite at the apple . . . ." Rafter v. Liddle, 288 Fed. App'x. 768, 769 (2d Cir. 2008) (citation and quotation marks omitted).  The purpose behind confining reconsideration to matters that were "overlooked" is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Polsby v. St. Martin's Press, Inc., No. 97-CV-690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (citation and quotation marks omitted).

**Discussion**

   **1. The Motion To Reconsider Is Granted**

Plaintiff asserts that the Court overlooked that the claim in Barclays Bank involved a claim against a depositary bank, that it overlooked New York law permitting claims for money had and received by a plaintiff alleging superior title to funds over that of a mistaken or wrongful depositor, and that it overlooked New York law that allows creation of a property interest by Court-imposed trust.  Plaintiff additionally asserts

3

that to apply Barclays Bank would result in manifest injustice, a separate ground upon which to grant reargument or reconsideration.

Because the March 14 Opinion did not fully consider whether Barclays Bank's holding is limited to cases concerning claims against depository banks or whether related New York law concerning superior title and creation of a property interest via a Court imposed trust would allow Plaintiff to sustain a claim for money had and received against the Defendant. As such, the Court reconsideration is granted.

### 2. On Reconsideration The Motion To Dismiss Is Granted

Plaintiff's assertions that Barclays Bank's holding is limited to claims against depositary banks and that New York law regarding superior title and property interests created by Court-imposed trust allow Plaintiff to adequately plead a claim for money had and received are unpersuasive. Upon reconsideration, the application of Barclays Bank to the instant action remains unchanged.

   a. **Barclays Bank Requires Actual Or Constructive Possession Of A Negotiable Instrument In Order To Have Standing To Assert A Claim For Money Had And Received**

4

Plaintiff asserts that the Court overlooked that the claims in Barclays Bank were against a depository bank, and not against the mistaken or wrongful depositor of the funds at issue. (Pl.'s Mem. Supp. Recon. 7.) Specifically, the Foundation argues that the New York Court of Appeals did not address the rights that the correct payee of a check may have against a forger in Barclays Bank and that there is, in fact, no common law rule that precludes the named payee from suing the entity that mistakenly or wrongfully deposited funds that belong to the named payee. Id.

In its FAC, the Foundation pleaded a claim for money had and received against both the Association and the depositary bank and now the Foundation seeks to have the Court sustain Count IX against the Association only.

In general, an action for money had and received is a contract implied in law. Fernbach, LLC v. Capital & Guarantee Inc., No. 08-CV-1265, 2009 WL 2474691, *5 (S.D.N.Y. Aug. 12, 2009). In order to establish a claim for money had and received, a party must demonstrate "that

(1) defendant received money belonging to plaintiff;

5

      (2)    defendant benefited from the money; and

      (3)    under principles of equity and good conscience, defendant should not keep the money."

Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 125 (2d Cir. 1984) (citing Miller v. Schloss, 218 N.Y. 400, 407 (1916)). An action for money had and received "depends upon equitable principles in the sense that broad considerations of right, justice and morality apply to it." Parsa v. State, 64 N.Y.2d 143, 148 (1984). The remedy is generally available "if one man has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass." Id. (citations omitted).

Barclays Bank indisputably addresses claims brought against a depositary bank, and much of its policy analysis stems from a consideration of the intentions and risk allocation scheme of the UCC with respect to such institutions. However, Barclays Bank also stands for broader principles and the requirement that a check must come into the actual or constructive possession of a plaintiff in order for him to have standing against a defendant in Barclays Bank is one which applies. The fact that New York courts have not yet applied it

6

in a case factually similar to the instant action is not in and of itself dispositive.

Plaintiff points to Barclays Bank's citation of Allen v. M. Mendelsohn & Son, 207 Ala. 527 (Sup. Ct. 1922) to support its claim that an action for money had and received can be made against an entity that mistakenly or wrongfully deposited funds that belong to a plaintiff. (Pl.'s Mem. Supp. Recon. 8-9.)[1] The Barclays Bank opinion does, indeed, state that the Allen decision was "not in point" and that "the suit was not against the depositary bank." However, when Barclays Bank's brief acknowledgment of Allen is read in conjunction with the body of the Barclays Bank opinion, the thrust of the Court of Appeals' decision is that a plaintiff must have received physical or constructive possession of a check to have standing to assert a money had and received claim, rather than whether a plaintiff is a depositary bank.

Barclays Bank cites to and relies on broad principles

---

[1] In Allen, the Illinois Central Railroad Company (the "Railroad") prepared a check for the plaintiff. The check was sent to the Railroad's disbursing agent in Birmingham, Alabama where it was subsequently stolen by an unknown imposter. The imposter forged the plaintiff's indorsement and used the check to pay for merchandise purchased from the defendants. The defendants collected the money via the forged indorsement. The plaintiff sued the defendants and the court was left to decide whether "the fact that the check failed to reach the hands of plaintiff is fatal to his recovery." Allen, 207 Ala. at 528.

7

of negotiable instruments law, noting that "[i]t has long been held that a check has no valid inception until delivery" and that "a payee must have actual or constructive possession of a negotiable instrument in order to attain the status of a holder." Barclays Bank, 76 N.Y.2d at 536-37. It is on these principles, and not simply the status of the defendant as a depository bank, which Barclays Bank bases its holding: "[p]ermitting a payee who has never had possession to maintain an action against the depository bank would be inconsistent with these principles. It would have the effect of enforcing rights that do not exist." Barclays Bank, 76 N.Y.2d at 537 (emphasis added). In the face of such language, one footnote dismissing a non-controlling case cannot shift the import and emphasis of the central observations of the Barclays Bank court's opinion.[2]

---

[2] Additionally, it is likely that the New York Court of Appeals would find Allen more dissimilar to the instant case than similar. Barclays notes that Allen involved a "dispute over the proceeds of a stolen check." Barclays, 76 N.Y.2d at 541 n. 5. In Allen, the court determined that:

> . . . if plaintiff is allowed to recover from defendants, his election will put an end to the matter, for the drawer of the check intended it for plaintiff, and defendants, however innocently, received the money as upon plaintiff's indorsement, and, but for their intermeddling, however, innocently, it would have reached plaintiff. Therefore defendants do not appear to be in a position to deny plaintiff's ownership.

Allen, 207 Ala. at 528 (internal citations omitted and emphasis added). Allen involves a different set of circumstances than those present in the instant case. The fact that the check would have reached the plaintiff were it not for the fact that the check had been stolen by an unknown interloper appears to have been dispositive for the Alabama court, presumably satisfying the court as to the drawer's intent. In the instant case, the drawer's intent has not been adequately established and Defendant is, in fact, in a position to deny Plaintiff's interest in the checks as the checks were sent directly to the Association, and not fraudulently intercepted in transit

8

Plaintiffs further argument that Barclays Bank's holding relies on the fact that the payee was "not left without a remedy" because he or she could sue on the "underlying obligation," but that in the instant case the Foundation has no right to sue the donors – and thus should be allowed to sue the Association – is unpersuasive. Indeed, it may just as easily be said that precisely because the Plaintiff may not sue the donor, common sense would dictate that the Plaintiff should not then be granted a separate and independent right to sue the recipient of the donor's funds. Barclays Bank clearly counsels, as a practical consideration, that a payee who never possesses a check is not well situated to litigate over the actions of the drawer. Barclays Bank, 76 N.Y.2d at 537 ("Where a payee has never possessed the check, it is more likely that the forged indorsement resulted from the drawer's negligence, an issue which could not be readily contested in an action between the payee and depositary bank.") (citations omitted). To grant such a right to litigate would fly in the face of the broad, practical considerations articulated in Barclays Bank.

### b. The Foundation Has Not Established A Superior Title To The Funds Deposited By The Association

---

before they made their way to the Foundation.

Plaintiff next argues that New York law as to money had and received does not preclude a claim by one alleging a superior interest in the funds against the entity that took the funds. (Pl.'s Mem. Supp. Recon. 7.) The Foundation argues that the Court overlooked that the New York doctrine of "money had and received" requires either an ownership interest or a superior right to the proceeds and that it does not require only the holding, possession, or acquisition of the checks. (Pl.'s Mem. Supp. Recon. 9.)

Plaintiff states that the Foundation has alleged it has a superior title to that of the Association to the funds because it was the named payee on over five thousand checks totally more than $1.5 million that the Association deposited into its own account, despite knowing the Foundation was the named payee. (Pl.'s Mem. Supp. Recon. 10.) In fact, Plaintiff alleges, the Association endorsed checks that were on their face made payable to the Foundation, without attempting to verify whether the intent of the payor was to make a "gift" to the Association instead of the Foundation. Id. As a result, the Foundation asserts, under New York law, title could not pass to the Association and the Association could have no property interest in the checks or their proceeds and that these

allegations are sufficient for the Foundation to meet its standing and pleading burdens. Id.

Barclays Bank makes no mention of establishing superior title over funds but rather focuses on whether a plaintiff has the requisite interest, or the right, to assert a claim. The cases cited to by Plaintiff do not adequately assist it in making its argument for superior title. In re Ames Dep't Stores reinforces the notion that a plaintiff must establish ownership interest or superior title, but discusses the notion of superior title in the context of bankruptcy proceedings and considering whether the plaintiff's claims were estopped and so it bears little in common with the facts in the instant case. In re Ames Dep't Stores, Inc, 06-CV-5394, 2008 WL 7542200, *9 (S.D.N.Y. June 4, 2008) (finding that the plaintiff could not pursue a claim for money had and received merely because it was owed a debt by the defendant). Carnegie Trust addresses the very particular situation of a debtor-creditor relationship. Carnegie Trust Co. v. Battery Place Realty Co., 67 Misc. 452, 453 (1910) ("where the relation of debtor and creditor exists, if the debtor pays the debt to one not having title to the claim, the creditor may ratify such payment and sue the recipient of the money in an action for money had and

11

received").³

In Dechen v. Dechen, an action was maintained against an improper recipient of funds by the person in whose favor the deposit had been made. 59 A.D. 166, 68 N.Y.S. 1043 (2d Dep't 1901). The evidence established that the uncle intended that the nephew benefit from the deposit and that, as such, at the time the deposit was made the monies "inured to the benefit of plaintiff and vested in him the right to demand and receive the same." In instant case, the donors did not deposit their donations directly into the bank for the benefit of the Plaintiff; instead, they sent their checks directly to the Defendant. Had the donors deposited the funds directly into the bank, that deposit might have "vested" Plaintiff with the right to demand and receive the same. Such, however, is not case at hand.

Plaintiff has not established superior title. As stated in this Court's previous opinion, the Foundation does not

---

³ The general holding in Carnegie Trust centers around a creditor-debtor relationship, or other possessory interest: "where there are not two independent claims to the money owed, but simply two parties claiming to be the owners of the same debt or chose in action, the party having the superior title may maintain an action for money had and received against the wrong claimant, if he received the money." Carnegie Trust, 67 Misc. at 454. A "chose in action" refers to the right to bring an action to "recover a debt, money, or thing" or recover under a contract, and implies in it a possessory interest. See Chose Definition, BLACK'S LAW DICTIONARY (9th ed. 2009), available at WestlawNext.

make any factual allegation that any of the donors in question actually intended that their donations go to the Foundation rather than the Association or one of the 'scores' of other Alzheimer's charities. (March 14 Op. 33.)

### c. Plaintiff Has Failed To Establish A Basis To Impose A Trust On Defendant For the Benefit Of The Foundation

Plaintiff further argues that the Court overlooked the fact that, even if <u>Barclays Bank</u> decision applies, New York law creates a property interest for the Foundation by impressing a trust on the Association for the benefit of the Foundation. (Pl.'s Mem. Supp. Recon. 7.) The Foundation argues that New York law allows a plaintiff to recover money that "come[s] into the hands of the defendant" by "impress[ing] with a species of trust" on the defendant. (Pl.'s Mem. Supp. Recon. 10 (citing <u>Board of Educ. of Cold Springs Harbor Cent. School Dist. v. Rettaliata</u>, 78 N.Y.2d 128, 138 (1991).) Plaintiff further asserts that New York courts' imposition of a "species of trust" on the defendant satisfies for the named payee any "possessory interest," in other words, filling any "gap" in standing or pleading. (Pl.'s Mem. Supp. Recon. 11.)

Plaintiff's assertion that the Court overlooked New

13

York law that allows a court to impose a trust on a defendant to allow plaintiff to recover money which comes into the hands of the defendant fails. In finding that <u>Barclays Bank</u> should indeed apply to the instant litigation, Plaintiff has failed to establish a possessory interest in the funds in dispute and, consequently, cannot claim the privilege of a trust. Indeed, the 'species of trust' referred to by Plaintiff appears to be just another articulation of the nature of the money had and received cause of action; in other words, a description of the obligation of a wrongful recipient of funds that belong to another. (<u>See</u> Pl.'s Mem. Supp. Recon. 10-11.) Plaintiff may not rely on such language to create for themselves a possessory interest where there is none.

### d. Plaintiff Has Failed To Establish Manifest Injustice

Plaintiff argues, in the alternative, that it would be "manifestly unjust for this Court to extend the <u>Barclays Bank</u> decision to preclude standing by a charity claiming a superior right to the proceeds of checks deposited by another charity." (Pl.'s Mem. Supp. Recon. 11.) The Foundation puts forward five separate arguments to support its manifest injustice claim: (1) assuming the donor is the only party with standing, he or she will in most cases never know that its charitable donations were

14

kept by the wrong charity and, thus, the intended recipient of the donation would in most cases be deprived of the donation; (2) due to the usually modest amounts of donations, most donors have little to no incentive to pursue a claim against the charity that mistakenly or wrongfully deposited their checks; (3) the Foundation has an interest in receiving all funds it was intended to receive so it may realize its objectives on behalf of its beneficiaries; (4) the Court's reading frustrates the public policy guidelines promoted by the New York and Illinois Attorneys General for charitable organizations; and (5) to dismiss the Plaintiff's claims for lack of standing would deprive charitable organizations of "enhanced judicial protection" to "ensur[e] their contributions to charitable organizations are received by the correct charity." (Pl.'s Mem. Supp. Recon. 12-13.)

There is no question that it is a lamentable state of affairs if one charitable entity benefits from funds meant for another philanthropic organization. However, the New York Court of Appeals in Barclays Bank has clearly stated that, on balance, the preservation of a transactional chain for guiding litigation takes precedence. Moreover, when drawer or, as in this case, donor intent has not been sufficiently established, it would be inappropriate for the Court to provide to a plaintiff who

15

believes, but has not sufficiently established, that it has a right to the funds in question, a short-cut to litigating against the purported wrongful depositor.

To be sure, there are drawbacks to imposing an "orderly process" on a civil action that follows the order of the "transactional chain." Barclays Bank, 76 N.Y.2d at 538. Barclays Bank, however, determined that the imposition of such a process was a dominant policy consideration and would promote judicial economy by preventing unnecessary litigation. Barclays Bank, 76 N.Y.2d at 538-39. Plaintiff's policy and practical considerations regarding donors' incentives are not without merit. It is, indeed, questionable what level of motivation donors might have in pursuing a wrongful deposit of a very small sum when one of the principal benefits of making the donation – the receipt of a charitable deduction – is achieved no matter which organization deposits a donor's check. As frustrating as this might be, however, Barclays Bank counsels against allowing a plaintiff, who makes a claim solely on its status as named payee and intended beneficiary, to circumvent the transactional chain.[4] It in fact counsels even more so in this case where the

---

[4] In the instant case, perhaps even more than in Barclays Bank, it is crucial to follow an orderly process where there exists no underlying obligation and potential ambiguity as to the donors intent due to the similarity of the Plaintiff's and Defendant's names. Id. ("Plaintiff maintains, however . . . that, based solely on its status as named payee and intended beneficiary of

Plaintiff has failed to establish donors' intent that it was even meant to receive the checks in question.[5]

---

the checks, it has a sufficient interest to bring . . . a common-law action for money and received. We believe such a rule would be contrary to the underlying theory of the UCC . . . .").

[5] Plaintiff claims also that, by dismissing the Foundations claim for lack of standing, the donors' intent will be frustrated. Without establishing donors' intent, however, it cannot be determined whether intentions are, in fact, frustrated. Plaintiff's further claim that it would be manifestly unjust to dismiss Plaintiff's claim for lack of standing because it would unfairly deprive charitable organizations of "enhanced judicial protection" does not counsel a different result.

17

**Conclusion**

Based upon the facts and conclusions of law set forth above, Plaintiff's request for relief from the judgment dismissing Count IX of the FAC is denied.

It is so ordered.

Dated:   New York, New York
         August 27, 2014

                                             _____
                                             Robert W. Sweet
                                             U.S.D.J.

18