UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X
ALZHEIMER'S FOUNDATION OF AMERICA, INC.,
d/b/a ALZHEIMER'S FOUNDATION,

                Plaintiff,           10 Civ. 3314

    -against-                OPINION - Under Seal

ALZHEIMER'S DISEASE AND RELATED DISORDERS
ASSOCIATION, INC., d/b/a ALZHEIMER'S
ASSOCIATION and NORTHERN TRUST BANK,

                Defendants,

    -against-

ALZHEIMER'S FOUNDATION OF AMERICA, INC.,
d/b/a ALZHEIMER'S FOUNDATION, ERIC HALL,
an individual, ALANA GREEBEL, an individual,
H. KRISTIN LEESMENT, an individual,
DAVID FELMY, an individual, SANDRA HORAN,
an individual, THOMAS HORAN, an individual
and PAMELA R. CHAIT, an individual.

                Counter-Defendants.

------------------------------------------------X

A P P E A R A N C E S:

      Attorney for Plaintiff

      INGBER & GELBER, LLP
      181 Millburn Avenue, Suite 202
      Millburn, New Jersey 07041
      By:  Mark J. Ingber, Esq.

Attorney for Defendants-Counterclaim Plaintiff

BAKER & MCKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
By:  John A. Basinger, Esq.
     Lisa W. Rosaya, Esq.
     Michael Atkins, Esq.

**Sweet, D.J.**

Plaintiff Alzheimer's Foundation of America, Inc. d/b/a Alzheimer's Foundation (the "Foundation" or "Plaintiff") moves for an Order awarding reasonable attorney's fees and other appropriate sanctions against Alzheimer's Disease and Related Disorders Association, Inc. (the "Association"), and its counsel, Baker & McKenzie LLP, (the "Association's Counsel" or "Counsel") pursuant to Federal Rule of Civil Procedure 11(b) ("Rule 11") and 28 U.S.C. § 1927 ("§ 1927") in accordance with Rule 11(c)(2).

The Association and Northern Trust Company ("Northern Trust") (collectively, "Defendants") move to dismiss Plaintiff's Fourth Amended Complaint (the "FAC").

Upon the conclusions set forth below the motion of the Foundation is denied, the motion of the Association is granted and the FAC is dismissed.

**Prior Proceedings**

2

The Foundation commenced this action against the Association and Northern Trust in April 2010 and filed an amended complaint ("AC") in July 2010. The Association and Norther Trust filed motions to dismiss. (Dkt. Nos. 17, 20.)

On May 25, 2011, this Court issued the May 25 Opinion, *See Alzheimer's Foundation of America, Inc. v. Alzheimer's Disease and Related Disorders Assoc., Inc.*, 796 F. Supp. 2d 458 (S.D.N.Y. 2011) (the "May 25 Opinion"), granting in part and denying in part, the parties' respective motions to dismiss. (Dkt. No. 33.) The May 25 Opinion dismissed the Association's fraud claims, stating:

> The [Pretextual I]nvestigation does not in itself constitute fraud. *See Apple Corps. Ltd. v. Int'l Collectors Soc'y*, 15 F. Supp.2d 456, 475 (D.N.J. 1998) (accepting attorneys' use of undercover investigators to detect ongoing violations of the law as not ethically proscribed); *see also Sega Enters. v. Maphia*, 857 F. Supp. 679, 689 (N.D. Cal. 1994) ("the fact that a plaintiff's employee, in the course of investigating a copyright or trademark infringement when such identification would have defeated the investigation"). The provision of checks to the Association determines the extent of trademark infringement and use of funds by the Association. It is not alleged that the Association reasonably relied on any statement made by each Defendant, as the checks at issue were designated as intended for the Foundation. No allegation of damage resulting from the alleged fraud has been set forth. Accordingly, the motion to dismiss the Association's fraud claim is granted.

3

(May 25 Opinion at 27). The opinion granted the Association's
motion to dismiss for Unjust Enrichment, Payments on Instruments
with Unauthorized Signatures, Conversion and Conspiracy, (see
May 25 Opinion at 23, 16-22), while denying the motion to
dismiss claims under the Lanham Act and its state-law claims for
Dilution and Unfair Competition. (See id. at 7-16.) As to
Northern Trust, the opinion dismissed all claims, observing that
the Foundation's complaint was "devoid of any factual predicate
for the alleged wrongful payment of any checks by the Trust."
(May 25 Opinion at 27-28.)


In June, the parties then filed their second amended
complaints (the "SACs"). (See Dkt. Nos. 40, 35.) The
Foundation moved again to dismiss the counts against the
Individual Defendants. The Court did not rule on the
Foundation's motion because the parties, in August 2011, amended
their pleadings for a third time (the "TAC"). The Foundation
filed its TAC on August 9, 2011, and the Association filed its
Answer and Counterclaims on August 22, 2011. (See Dkt. Nos. 47,
48.) Neither the SACs nor the TAC named Northern Trust as a
defendant, or alleged against the Association any claims
dismissed in the May 25 Opinion.

On January 17, 2012, this Court issued a Discovery order (the "Discovery Order") resolving a dispute concerning the Association's obligations regarding, among other things, disclosure and review of checks deposited by the Association since 2007, which allegedly may have been made payable to the Foundation instead. The Discovery Order instructed the Association to make all checks it deposited from 2007 to the present available for review by a mutually agreed upon third-party vendor. (Discovery Order at 3.)

On February 2, 2012, the parties entered into a Confidentiality Order, which was "So Ordered" by the Court. The Confidentiality Order defines "Confidential Information or Items" as "information (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c)." (Confidentiality Order at 1.) It also defines "Highly Confidential – Attorneys' Eyes Only Information or Items" as "extremely sensitive 'Confidential Information or Items' disclosure of which to another Party or Non-Party would create a substantial risk of serious hardship . . . ." (*Id.* at 2.) The Confidentiality Order also outlined the various processes and

5

procedures the parties were to follow to designate information that they deemed confidential, the parties who would have access to each class of information and the procedures involved for challenging the various confidentiality designations made by the respective parties.

On June 25, 2014, the Association's motion to maintain confidentiality was granted, and the Foundation's cross-motion to dismiss the remaining claims against the Individual Defendants was granted.

The Foundation then filed the FAC on August 1, 2013, which asserts ten causes of action against the Association and Northern Trust. On October 3, 2013, the Association and Northern Trust Bank submitted a joint motion to dismiss the FAC. On November 7, 2013, the Foundation submitted a motion for sanctions against the Association and the Association's Counsel.

Both motions were heard and marked fully submitted on December 11, 2013.

**Facts**

The facts underlying this action were previously set forth in this Court's opinion dated May 25, 2011. *See Alzheimer's Foundation of America, Inc. v. Alzheimer's Disease and Related Disorders Assoc., Inc.*, 796 F. Supp. 2d 458 (S.D.N.Y. 2011). Knowledge of the general background of this case is assumed.

## The Applicable Standard

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

**Rule 12(g)(2) and Law of the Case do not Bar Reconsideration of Counts not Dismissed in the May 25, 2011 Order and as Such Sanctions Under Rule 11 or 28 U.S.C. § 1927 are not Warranted**

As an initial matter, the Foundation maintains that Defendants violated Rule 12(g)(2) and the law-of-the case doctrine by raising in the instant motion arguments that were available but omitted from the previous motion to dismiss, and by rearguing the sufficiency of the Lanham Act and related New York state-law claims, which were upheld in the May 25, 2011 Order. According to Plaintiff, this warrants sanctions under Rule 11 and 28 U.S.C. § 1927.

Defendants have not violated either Rule 12(g)(2) or the law-of-the-case doctrine.

First, the Foundation contends that the Association violated Rule 12(g)(2) by "seeking to raise new arguments that [it] could have, but did not raise at the time the prior Motion to Dismiss was made." (The Foundation's Opposition Brief, "Opp. Br."; at 6.) Rule 12(g)(2) requires a party to consolidate all

8

of its available Rule 12 defenses into a single motion: "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." *See* Rule 12(g)(2).

However, Rule 12(h)(2) expressly preserves failure to state a claim "against waiver during the pleading, motion, discovery and trail stages of the action." 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1392 at 522 (3d ed. 2004) ("Wright & Miller"). Under Rule 12(h)(2), failure to state a claim may be raised in a motion under Rule 12(c) "after the pleadings are closed—but early enough not to delay trial" or otherwise in any pleading under Rule 7(a).

The May 25 Order granted Northern Trust's motion to dismiss the Foundation's AC in its entirety, and granted in part and denied in part the Association's motion to dismiss the AC, allowing the trademark and related state-law claims to proceed to discovery. The Foundation subsequently filed a second and then third amended complaint, neither of which alleged counts against Northern Trust, or claims against the Association that the Court previously dismissed. The Foundation's fourth

9

complaint then brought Northern Trust back into the litigation as a Defendant, and relied heavily on different facts than those in the prior complaints: "[a]t the time of the May 25th Decision, the Foundation had pleaded its case based solely on checks cashed as part of its pretextual investigation, coupled with the earlier Virginia case." (Opp. Br. at 2.) It was only after extensive discovery and the Plaintiff's fourth attempt at a complaint that both Defendants filed the instant motion. As such, though the initial pleading had closed, no delay exists as to a trial; to the contrary, the instant motion streamlines the available causes of action based on the benefit of the discovery already undertaken.

The Foundation's second contention, that the law-of-the-case doctrine precludes Defendants from attempting to dismiss the trademark and related state law claims, which were dismissed in the May 25, 2011 Order, is also unavailing.

The law-of-the-case doctrine is not a rigid rule but a discretionary doctrine that does not limit a district court's power. *Westerbeke Corp. v. Baihatsu Motor Co., Ltd.*, 304 F.3d 200, 219 (2d Cir. 2002); *see also Arizona v. California*, 460 U.S. 605, 618 (1983) ("Law of the case directs a court's

discretion, it does not limit the tribunal's power."); *First Nat'l Bank of Hollywood v. American Foam Rubber Corp.*, 530 F.2d 540, 453 n.3 (2d Cir. 1976) ("In this Circuit, the law of the case is a discretionary doctrine that need not be applied when no prejudice results from its omission.").

The procedural posture of the instant litigation militates in favor of exercising such discretion with respect to the Lanham Act and related claims.

"Rulings on the sufficiency or amendment of pleadings are easily modified or retracted, in keeping with the general subordinate role played by pleading in modern practice." CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 4478.5 at 811 (2d ed. 2002) ("Wright, Miller, & Cooper"). Where "[a] ruling made early in the proceedings" rests "on poorly developed facts that have been better developed by continuing proceedings," "the forward progress of the case encourages reconsideration . . . [and] [d]enial of a motion to dismiss may be followed by an order granting dismissal." *Id.* at 698-99. Such a situation is presented where, as here, the Foundation concedes that new evidence exists, and where the litigation has not been unduly delayed by the instant motion.

11

The facts alleged in the FAC are different from those previously alleged in the first three complaints: the FAC is based on checks provided by the Association in discovery rather than on the pretextual checks and the Virginia case, which provided the basis for the earlier complaints. (Opp. Br. at 20.) Further, it is Plaintiff that has since filed three subsequent complaints: because Northern Trust was independently required to respond to each of the new allegations in the FAC, the fact that the Association joined in those arguments cannot reasonably be seen to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1)[1].

Despite the new evidence and four separate attempts at complaints, the Foundation still fails to plausibly allege any misconduct other than cashing checks containing the word "Foundation." Where Plaintiff's allegations were initially given more leeway without the benefit of discovery, the "forward

---

[1] Even assuming that the motion was unjustified as made by the Association with respect to the re-plead previously dismissed claims, because Northern Trust was entitled to respond to the new allegations, the Association's motion does not "unreasonably or vexatiously multiply the proceedings." 28 U.S.C. § 1927. Any violation was therefore *de minimis*, which is not sanctionable under either Rule 11 or 28 U.S.C. § 1927. *See Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986) (holding that a *de minimis* violation of Rule 11 does not warrant imposition of sanctions); *see also* 28 U.S.C. § 1927 (sanctions only available for unreasonable and vexatious actions, meaning something worse than technical, minor infractions). Section 1927 also requires bad faith, which is not adequately alleged. *See infra* at 34.

progress" of the case, which evidences a lack of factual support for the Foundation's claims, "encourages" and allows reconsideration. *See* Wright, Miller & Cooper, § 4478.1 at 695.

Independently, the law-of-the-case doctrine does not apply where there has been "no ruling on the merits of the arguments" presented. (May 25, 2011 Order at 18) (quoting *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979))). The May 25, 2011 Opinion did not address whether the Foundation's trademark and related state-law claims failed because Defendants did not "use" the Foundation's mark in the sale or advertising of services. This now provides the basis for dismissal in the instant motion. *See infra* at 15-19. As such, this is not simply a case of rehashing the same arguments made in the initial motion. *Cf. Virgin Atlantic Airways, Ltd. v. National mediation Board*, 956 F.2d 1245, 1255 (2d Cir. 1992).

As to Northern Trust specifically, sanctions are inapplicable for the additional reason that "the law-of-the-case doctrine only precludes a party from re-litigating issues if it already had a full and fair opportunity to litigate the issues." *Westerbeke Corp. v. Daihatsu Moto Co., Ltd.*, 304 F.3d 200, 219 (2d Cir. 2002). Northern Trust was not named in the trademark

13

and related state-law counts in the Foundation's previous complaints, and never had an opportunity to litigate these claims. A "party joined in an action after a ruling has been made should be free to reargue the matter without the constraints of law-of-the-case analysis." Wright, Miller, & Cooper at 811.

Because Rule 12(g)(2) and the law-of-the-case doctrine do not preclude review of the Lanham Act and related state claims, sanctions are inappropriate and the claims will be addressed in the instant motion.

**Count I for Trademark Infringement Under the Lanham Act is Dismissed Because the FAC Fails to Allege "Use" of the Foundation's Marks in Commerce**

The Lanham Act § 43(a), 15 U.S.C. § 1125(a), prohibits a person from using "any word, term, name, symbol, or device, or any combination thereof . . . which is likely to cause confusion . . . as to the origin, sponsorship or approval of his or her goods . . . ." To prevail under 15 U.S.C. § 1125(a), the Foundation must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the Defendant used the marks (3) in commerce (4) "in connection with the sale . . . or advertising of goods or services" without the

14

Foundation's consent. *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188 (E.D.N.Y. 2007) (citing *1-800 Contacts, Inc. v. When U.com*, 414 F.3d 400, 407 (2d Cir. 2007)). The Foundation must also show that the Association's use of the mark is likely to "cause confusion or to cause mistake, or to deceive." *S&L Vitamins*, 521 F. Supp. 2d at 199.

"[I]f [a defendant] has not 'used' the [m]arks, there is no violation under the Lanham Act, regardless of the theory." *S&L Vitamins*, 521 F. Supp. 2d at 199. "[U]se must be decided as a threshold matter because, while any number of activities may be considered 'in commerce' or create a likelihood of confusion, no such activity is actionably under the Lanham Act absent the 'use' of a trademark." *1-800 Contacts v. Whenu.com, Inc.*, 414 F.3d 400, 412 (2d Cir. 2005) (quoting 15 U.S.C. § 1114).

The FAC does not allege that either of the Defendants "used" Plaintiff's mark for purposes of the Lanham Act.

"There is no trademark 'use' where a defendant does not place the trademark on any product, good, or service and where it is not used in any way that would indicate source or origin" to the public." *S&L Vitamins*, 521 F. Supp. 2d at 200;

*see also Fragrancenet.com, Inc. v. Versus Fragrancex.com, Inc.,*
493 F. Supp. 2d 545, 550 (E.D.N.Y. 2007) (in order to constitute
"use," the alleged infringer must proactively affix, reproduce
or displace the trademark at issue for the general public.).

Here, there is no allegation that Defendants
advertised or publicized the Foundation's marks, or that they
indorsed the checks with the Foundation's marks, name, or a
derivative of either. The only factual allegations of
wrongdoing against the Association in the FAC is that
"[p]ursuant to [its] written policy, the Association deposited
and obtained the proceeds and benefits of donor checks made
payable to the 'Alzheimer's Foundation of America' and its
assumed corporate name 'Alzheimer's Foundation,'" (FAC ¶ 45);
the only factual allegation of wrongdoing against Northern Trust
is that it accepted those checks from the Association. (*See* FAC
¶¶ 6, 55-57.) Merely indorsing, presenting or accepting a
check for deposit cannot constitute "use" in the context of a
trademark violation, nor does Plaintiff cite a single case for
such a proposition.

Even if use were alleged, the FAC fails to allege that
such use occurred "in commerce," which is defined, in relevant

part, as "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127. There is no allegation that Defendants in any way "placed," reproduced," or "displayed" the Foundation's trademark, let alone that such action was done to elicit services. Depositing, obtaining, or accepting checks from non-party donors made payable to organizations containing the word "Foundation" cannot reasonably be seen as "affix[ing], reproduce[ing] or displac[ing] the trademark at issue for the general public." *Fragrancenet.com, Inc.*, 493 F. Supp. 2d at 550. Where, as here, a defendant does not reproduce or display the plaintiff's trademarks at all, there can be no use "in commerce" or otherwise. *See 1-800 Contacts*, 414 F.3d at 412; *see also Site Pro-1, Inc. v. Better Metal, LLC*, 506 F. Supp. 2d 123 (E.D.N.Y. 2007) (granting motion to dismiss where plaintiff failed to allege facts supporting that defendant "placed plaintiff's trademark on any goods, displays, containers, or advertisements, or used plaintiff's trademark in any way that indicates source or origin" to consumers).

Plaintiff's cited precedent to support the allegations that Defendants have "used" its mark "in commerce" are inapposite. For instance, in *Hamzik v. Zale Corp.*, 2007 U.S.

17

Dist. LEXIS 28981 (N.D.N.Y. April 19, 2007), the court held that the defendant's display of its own products in response to a third party's actions of typing in the plaintiff's trademark *failed* to constitute "use in commerce" by the defendant: "that the [defendant's] website exhibited (displayed back) the search phrase entered by the computer does not transform Defendant's action into a 'use' within the Lanham Act." *Id.* at *7[2].

Similarly, in *Deborah Heart and Lunch Ctr v. Children of the World Foundation Ltd.*, 99 F. Supp. 2d 481 (D.N.J. 2000), cited by Plaintiff, the defendants had only operated for two years, whereas the plaintiff had operated for over 28 years. Because the junior user's name was confusingly similar to the senior user's name, the court held that the junior user "never had the choice to use [their confusingly similar name] as their [charity] name without the prospect of creating confusion and harm to the predecessor mark of the [senior user] for these services. [Junior user's second choice of name . . . must suffice." *Id.* at 494. Here, Plaintiff is the junior trademark holder.

---

[2] *Hamzik* declined to dismiss a Lanham Act claim based upon defendant's purchase of plaintiff's trademarked terms from search engines. *Id.* at *11-12. The Foundation does not claim that either Defendant ever purchased the Foundation's marks for display on search engages.

18

In addition, the FAC fails to show that if any use of Plaintiff's trademark did occur, such use was "communicated to the general public." *1-800 Contacts*, 414 F.3d at 409.

> A company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to a [sic] individual's private thoughts about a trademark. Such conduct simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods or services.

*Id.* Plaintiff's allegations relate solely to "internal utilization" of the trademark, through the deposit and acceptance of checks. Such "internal utilization . . . simply does not violate the Lanham Act." *See, e.g.*, *S&L Vitamins*, 521 F. Supp. 2d at 199-202 (holding that use of a trademark in metadata did not constitute trademark "use" within the meaning of the Lanham Act because the use "is strictly internal and not communicated to the public"); *Fragrancenet.com, Inc.*, 493 F. Supp. 2d at 545 (E.D.N.Y. 2007) (dismissing Lanham Act claims after finding no trademark "use" where the "use was strictly internal and, because such use is not communicated to the public, the use does not indicate source or origin of the mark").

Finally, the Foundation fails to plead that cashing checks is "likely to cause confusion." *See 1-800 Contacts*, 414 F.3d at 407.

The Association cannot be held responsible for the confusion created by the similarity in names of the parties. Given the 84 organizations registered with live trademarks that include the term "Alzheimer," (FAC ¶ 22), and the scarcity of terms that denote an entity, donors can be expected to confuse "Alzheimer's Assocation" with "Alzheimer's Foundation" as well as with "Alzheimer's Society," "Alzheimer's Institute," and so forth. Any such confusion has existed, and will continue to exist, irrespective of any alleged "use" of a trademark. To allow a plaintiff to hold a defendant liable for such confusion, particularly where, as here, the plaintiff is the junior trademark holder, (*see* FAC ¶ 66), is unreasonable. *See, e.g., American Diabetes Association Inc. v. National Diabetes Association*, 533 F. Supp. 16, 20 (E.D. Penn. 1981) (discussing inherent confusion in naming National Diabetes Association where there already exists an American Diabetes Association, and holding that "save the substitution of 'National' for 'American,' the titles are the same. Moreover, even though the

terms national and American do not sound or look alike, they may cause confusion because they convey the same meaning or mental image.").

Further, in this instance, the Defendants acts of depositing or accepting checks made "payable to" any organization cannot *lead to* confusion; if an individual donor has drafted a check made payable to "Alzheimer's Foundation" but mailed that check to the Association, any confusion was not *caused* by the Association's negotiation of that check, or Northern Trust's acceptance of that check, as the confusion predated any action by either party.

The Lanham Act claim against Northern Trust should be dismissed for the additional reason that the FAC does not, and cannot, state a claim for vicarious liability. Contributory liability claims can only proceed against the defendant service providers if plaintiff could show they (1) intentionally induced infringement or (2) knowingly supplied services and had sufficient control over infringing activity to merit liability. *Gucci America, Inc. v. Frontline Processing Group*, 721 F. Supp. 2d 228 (S.D.N.Y. 2010). There is no indication that Northern Trust played any role in the alleged infringement, or had any

21

control over the allegedly wrongful transactions.  Mere
acceptance for deposit of checks from a customer cannot give
rise to a claim for contributory liability against providers of
service, such as Northern Trust, under the Lanham Act.  *See id.*

Accordingly, Count I is dismissed in its entirety.

## **Count II for Trademark Dilution is Dismissed Because the FAC Fails to Adequately Allege Distinctiveness**

To state a claim for trademark dilution under New York
General Business Law § 360-1, the Foundation must show "(1) that
[its] mark is truly distinctive or has acquired secondary
meaning, and (2) a likelihood of dilution either as a result of
'blurring' or 'tarnishment.'"  *Info. Superhighway, Inc. v. Talk
A., Inc.*, 395 F. Supp. 2d 44, 56 (S.D.N.Y. 2005).  The statute
protects only "extremely strong marks," and "distinction for
dilution purposes often has been equated with the strength of a
mark for infringement purposes."  *Swatch Group (U.S.) Inc. v.
Movado Corp.*, 2003 U.S. Dist. LEXIS 6015, at *18-19 (S.D.N.Y.
Apr. 9, 2003).

Plaintiff has failed to allege any such
"distinctiveness," or that its use of the marks was either

22

"long," "extensive," or widely recognized by the public. (*See* FAC ¶ 95.)    Instead, the Foundation has acknowledged that its mark is junior; there is no dispute that the Association filed for registration of its Alzheimer's Association mark in 2002 and registered earlier trademarks as early as 1992, while the Foundation does not claim its first use in commerce of any of its marks listed in the FAC until January 2005.    (*See* Appendix, Exhibits 2 and 3 (USPTO Records for U.S. Reg. Nos. 2,850,223 and 1,733,830).    To the extent that there is blurring or overlap in the time periods, dilution protects a senior, more renowned mark against dilution by a junior mark.  *See, e.g., Federal Exp. Corp. v. Federal Expresso, Inc.*, 201 F.3d 168, 176-77 (2d Cir. 2000) (the court considers five factors when assessing dilution by blurring under Section 43(c) of the Lanham Act: "(1) similarity of the trademarks and trade dress; (2) similarity of the products; (3) sophistication of consumers; (4) renown of the senior mark and trade dress; and (5) renown of the junior mark and trade dress.").

Conclusory allegations that a junior mark is distinctive, devoid of any factual support, are insufficient to state a dilution claim under New York law.  *See, e.g., SMJ Group, Inc. v. 417 Lafayette Rest. LLC*, 2006 U.S. Dist. LEXIS

23

61645, at *11 (S.D.N.Y. Aug. 30, 2006) (plaintiffs' conclusory allegations that their marks are "widely recognized by customers as being associated with the high quality [services] offered by" plaintiffs, have "become uniquely associated with" plaintiffs' business, and have been used "continuously over a course of years" failed to establish requisite level of distinctiveness in the general public and thus failed to state a claim for dilution).

As to Northern Trust, because the Defendant does not participate in the market for the services at issue, it cannot engage in dilution. *See Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010) (dismissing NY GBL § 360-l claim along with federal dilution claim where "as eBay did not itself sell the goods at issue, it did not itself engage in dilution.").

Accordingly, Count II is dismissed as to both Defendants.

**Count III for Unlawful Deceptive Acts and Practices is Dismissed for Failure to Adequately Allege Public Injury and Because the Purported Unlawful Conduct is not Alleged to have Occurred in New York**

To state a claim for deceptive acts and practices under N.Y. Gen. Bus. Law § 349, the plaintiff must allege that (1) the challenged transaction was "consumer oriented;" (2) the defendant engaged in deceptive or materially misleading acts or practices; and (3) the plaintiff was injured by defendant's deceptive or misleading conduct. *See Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003). "For a § 349 claim to prevail, the gravamen of the complaint must be consumer injury or harm to the public interest . . . [e]ven for claims brought by a commercial claimant, [and] not a consumer." *Nomination Di Antonio E. Paolo Gensini S.N.C. v. H.E.R. Accessories, Ltd.*, 2009 U.S. Dist. LEXIS 117368, at *21-24 (S.D.N.Y. Dec. 13, 2009) (internal citations omitted). Such harm to the public interest must be "generally based on potential danger to the public health or safety." *Greenlight Capital, inc. v. Greenlight (Switzerland) S.A.*, 2005 U.S. Dist. LEXIS 2, at *23 (S.D.N.Y. Jan. 3, 2005).

Plaintiff's § 349 claim is dismissed for three independent reasons: (1) the FAC fails to describe any "consumer oriented" conduct resulting in harm to the public health or safety; (2) the FAC does not identify any injury to the general public "over and above" the harm suffered by Plaintiff in its

25

capacity as a competitor; and (3) the deception did not occur in
the state of New York, as required (see N.Y. Gen. Bus. Law. §
349(a) ("Deceptive acts or practices in the conduct of any
business, trade, or commerce or in the furnishing of any service
in this state are hereby declared unlawful") (emphasis added)).

First, the Foundation maintains that "Defendants'
deceptive acts and practices involve public sales activities of
a recurring nature, are consumer-oriented, and are materially
misleading." (FAC ¶ 102.) Yet, the Foundation has not pled any
facts that describe the existence of any such "public sales
activities," how any such activities were allegedly deceptive or
misleading, or how such activities resulted in harm to the
consuming public or to the public health or safety. The FAC's
allegations do not involve conduct related to interactions with
consumers at all: the Associated is alleged to have received
checks from donors and Northern Trust is simply alleged to have
accepted for deposit checks presented by the Association. Even
if receiving charitable donations constituted consumer-oriented
conduct, as Plaintiff contends, there is no allegation of any
action by Defendants that led the donors to mail the checks at
issue to the Association or deceived the donors in any way. In
short, there is simply no factual allegation that either

26

Defendant has fraudulently used the Foundation's marks in promoting its own services relating to consumers or otherwise.

Second, there is no injury alleged to the general public: "the majority view in this Circuit is 'that trademark or trade dress infringement claims are not cognizable under [§ 349] unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution.'" *Nomination Di Antonio E. Paolo Gensini S.N.C.*, 2009 U.S. Dist. LEXIS at *22 (quoting *Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 747, 486-87 (S.D.N.Y. 2002); *see also Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 413, n.2 (S.D.N.Y 2002) ("trademark cases are outside the scope of this general consumer protection statute").

The only "injury" alleged by the Foundation seems to be in its capacity as a competitor in the Alzheimer's charity industry as a result of the Defendants' alleged trademark violations. Internal injury to the Plaintiff, or even consumer confusion, is insufficient as a matter of law. *See, e.g., Karam Prasad, LLC v. Cache, Inc.*, 2007 U.S. Dist. LEXIS 63052 (S.D.N.Y. Aug. 27, 2007) (finding consumer confusion

insufficient as a matter of law to establish harm to the public interest); *Merck Eprova AG v. Gnosis S.P.A.*, 901 F. Supp. 2d 436, 457 (S.D.N.Y. 2012) (dismissing § 349 claim as "Merck's allegations focus almost entirely on losses suffered by Merck itself, not to the eventual—and theoretical—harm suffered by the public at large); *Vitolo v. Mentor HIS, Inc.*, 426 F. Supp. 2d 28, 34 (E.D.N.Y. 2006) (dismissing § 349 claim where plaintiff had not demonstrated "consumer-oriented conduct" when alleged harm was suffered by plaintiff and his business instead of consumers or the public); *Gucci Amer. Inc. v. Duty Free, Ltd.*, 277 F. Supp. 2d 269, 274-75 (S.D.N.Y. 2003) (trademark infringement claimant could not bring § 349 action because "core harm" was to another business and not consumers).

Finally, under N.Y. Gen. Bus Law § 349(a), the deceptive acts or practices must be in New York. *See* N.Y. Gen. Bus. Law § 349(a) ("Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this *in this state* are hereby declared unlawful.") (emphasis added). Here, the Foundation acknowledges that Chicago is the principal place of business of both Defendants, (*see* FAC ¶¶ 13-14), and that its claims deal with checks addressed and sent to the Association's address in Chicago.

28

(*See* FAC ¶¶ 62-63.) Though the Foundation includes the conclusory assertion that the Association does business in New York through resident chapters, the only location of receipt alleged in the FAC is Illinois. For § 349 to apply, "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y>2d 314, 325 (2002).

Because no consumer oriented conduct or public injury is adequately alleged, and because the transactions at issue did not occur in New York, the § 349 claim fails. *See, e.g., Goshen v. Mutual Life Ins. Co. of New York*, 774 N.E.2d 1190, 1196 (N.Y. 2002) ("To apply the statute to out-of-state transactions . . . would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business law § 349").

**Count IV for Unfair Competition is Dismissed Because Count I is Dismissed and Because Plaintiff has Failed to Plead that Defendants Caused a Likelihood of COnfusion**

Claims for unfair competition under New York common law require that a plaintiff demonstrate that the "result of the alleged infringement is a likelihood of confusion between the

marks of the alleged infringer and the charging party." *Jones Apparel Group v. Piccone*, 1994 U.S. Dist. LEXIS 7607, 7608 (S.D.N.Y. June 8, 1994) (citing *815 Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643, 649 (2d Cir. 1988)). A plaintiff must also show that the defendant "misappropriated the plaintiff's labors or expenditures and that the defendant displayed some element of bad faith in doing so." *Turner v. Temptu Inc.*, 2013 U.S. LEXIS 114298, at *35 (S.D.N.Y. Aug. 13, 2013) (citing *Jeffrey Millstein v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34-35 (2d Cir. 1995); *see also Digigan, Inc. v. Invalidate, Inc.*, 2004 U.S. Dist. LEXIS 1324, at *16 (S.D.N.Y. Feb. 3, 2004) ("The primary concern in unfair competition is the protection of a business from another's misappropriation of the business's organization or its expenditures of labor, skill and money") (internal citations omitted).

Dismissal of the Lanham Act claim requires dismissal of the unfair competition claim. *See, e.g., Twentieth Century Fox Film Corp. v. marvel Enters.*, 220 F. Supp. 2d 289, 298 (S.D.N.Y. 2002) (denial of federal trademark claims necessitated dismissal of the common law unfair competition claim). Because the Lanham Act is dismissed, *see supra* at 14-22, so too is Count IV for unfair competition.

In any event, the Foundation fails to allege how the Association's conduct in any way caused donors to send donations to the Association rather than the Foundation. Even if the donations were "mailed to the Association in error," as the FAC indicates, the Foundation is only one of "scores" of entities the donors could have intended to benefit if they did not intend the checks for the Association. (*See* FAC ¶¶ 21-22.) Further, to the extent any donor was or is likely to be confused as between the Association's marks and the Foundation's marks, the Association's mark is senior, and any confusion exists irrespective of any conduct that the FAC ascribes to either Defendant. *See supra* at 20.

As to Northern Trust, the FAC identifies no gain to or misappropriation by Northern Trust arising out of accepting instruments tendered by the Association. Accordingly, the unfair competition claim is dismissed as to both Defendants.

**Count V for Tortious Interference with Prospective Business Advantage Should be Dismissed Because the FAC Fails to Allege Termination of any Relationship, any Crime or Independent Tort, or any Intentional Interference or Dishonest Means**

31

To state a claim for tortuous interference with prospective business advantage, the Foundation must allege facts supporting that: (1) defendant had knowledge of plaintiff's business opportunity with another party; (2) defendant intentionally interfered with that opportunity; (3) defendant acted solely out of malice, or used dishonest, unfair, or improper means; (4) the contract or prospective business relationship would have been entered into but for defendant's interference; and (5) resulting damage. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006). Further, "the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortuous will generally be . . . insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103-04 (N.Y. 2004) ("conduct constituting tortuous interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship.").

The Foundation seems to base this claim on the notion that the Association and Northern Trust are somehow interfering with the Plaintiff's prospective relationships with potential

32

donors by depositing and cashing checks that were sent to the
Association, not the Foundation.

In addition to being illogical, this contention is
unsupported. The FAC does not plead any facts evidencing a
claim that the Foundation had a business relationship with the
donors of the checks in question: the Foundation does not make
any factual allegation that any of the donors in question
actually *intended* that their donations go to the Foundation
rather than the Association or one of the "scores" of other
Alzheimer's charities, much less that the Association *knew* that
the donors intended the checks to go to the Foundation when they
deposited them (*see* FAC ¶¶ 21-22). *See RFP LLC v. SCVNGER,
Inc.*, 788 F. Supp. 2d 191, 198 (S.D.N.Y. 2011) ("Interference
that does not rise to the level of a breach of agreement or
severance of the relationship does not amount to an injury
sufficient to make a tortuous interference claim.")

The FAC also fails to allege any evidence of bad
faith. The only potential allegation of bad faith is that the
Association had in its policies and procedures that it could
keep for itself "gifts made to Alzheimer's anywhere in the Payee
line and mailed to one of our mail boxes without correspondence

33

or reply device." (Ingber Dec. Ex. A. ¶ 46.) The Association's public and transparent display of its policies cannot fairly be attributed to bad faith, nor does the practice of accepting checks which on their face seem to be made to the correct organization and which do not contain a way to respond to the donor for clarification.

Because the Foundation fails to allege any required elements of Count V, Plaintiff's claim for tortious interference is dismissed in its entirety.

## Counts VI to IX are Dismissed for Lack of Standing under *Barclays Bank*

Counts VI-IX[3] are dismissed because the Foundation never possessed the checks at issue, and as such the claims lack standing under *Barclays Bank*. *See State v. Barclays Bank of New York, N.A.*, 563 N.E.2d 11, 12 (N.Y. 1990) (holding "that requiring 'delivery, either actual or constructive, [as] an indispensable prerequisite for' a conversation action under UCC 3-419(1)(c) is consistent with the view of most authorities and supported by practical considerations.").

---

[3] Counts VI, VII, and VIII were also previously dismissed in the May 25, 2011 Order.

The New York Court of Appeals has made clear that the
(putative) named payee of a check lacks standing to pursue a
conversion claim under § 3-419 if the payee never had possession
of the check. *See id.* "It has long been held that a check has
no valid inception until delivery." *Id.* at 536 (a payee must
"have actual or constructive possession of a negotiable
instrument in order to attain the status of a holder and to have
an interest in it."). "Permitting a payee who has never had
possession to maintain an action against the depositary bank
would be inconsistent with these principles . . . [and] would
have the effect of enforcing rights that do not exist." *Id.* at
537.

In *Barclays*, the plaintiff maintained, as here, that
"based solely on its status as named payee and intended
beneficiary of the checks, it [had] sufficient interest" to
bring a claim under UCC 3-419(1)(c) or a "common-law action for
money had and received." *Id.* at 538. As the court held in
*Barclays*, and as applies to Counts VI-IX, "such a rule [w]ould
be contrary to the underlying theory of the UCC." *Id.* The
court further explained:

> Nor are we persuaded by Plaintiff's suggestion that permitting a suit under UCC 3-419(1)(c) by a payee not-in-possession would promote judicial economy and avoid circuity of action. On the contrary, relegating such a payee to a suit against the drawer on the underlying obligation would give full effect to the UCC's loss allocation scheme by furthering the aim of placing ultimate responsibility of the party at fault through an orderly process in which each defendant in the transactional chain may interpose the defenses available to it.

*Id.* at 533.

The Foundation does not allege that it possessed, held, or ever even acquired any of the checks at issue, and instead acknowledges that the drawers of the checks in question sent their checks directly to the Association, which then deposited them with Northern Trust. (*See* FAC ¶ 72.) As in *Barclays*, because the checks at issue "were never actually or constructively delivered to plaintiff," the Foundation never acquired a "property interest in them and cannot be said to have suffered a loss." *Id.* at 540-41; *see also Lund v. Chemical Bank*, 760 F. Supp. 51, 53 n.2 (S.D.N.Y. 1991) ("*Barclays* conclusively established as New York law that a payee may maintain [an action under § 3-419] against a depositary bank only if the payee at some time possessed the instrument in question."). The same holds true under Illinois law, which holds that, "[u]ntil delivery, the payee does not have any

interest in the check." *See* Illinois UCC § 3-420, Official
Comment 1.

Significant practical considerations support this
conclusion. "Where a payee has never possessed the check, it is
more likely that the forged indorsement resulted from the
drawer's negligence, an issue which could not readily be
contested in an action between the payee and depository bank."
*Id.*

Though *Barclays* was based on a conversion action under
§ 3-419, it applies equally to Counts VII, VIII, and IX, for
unjust enrichment[4], payment instruments with unauthorized
indorsements[5], and money had and received, respectively. While

---

[4] The unjust enrichment claim as applied to Northern Trust fails for the
additional reason that the FAC does not plead that Northern Trust was
enriched or benefitted by accepting the Association's tender of the checks.
*See Wallender v. Sampson*, 1996 U.S. Dist. LEXIS 9163, a *6-7, 9-10 (S.D.N.Y.
June 28, 1996).

[5] Count VIII for payment on instruments with unauthorized indorsements under
UCC § 3-404 is also dismissed for the additional reason that this section of
the New York UCC does not provide for an independent cause of action. *See
2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*, 2010 U.S.
Dist. LEXIS 132755, at *7 (S.D.N.Y. Dec. 13, 2010) ("Section 3-404 governs
the effect of unauthorized signatures. It does not state or provide for an
independent cause of action against a bank for an unauthorized charge against
the account.") Plaintiff's cited case to the contrary, *Fundacion Museo de
Arte Contemporaneo de Caracas-Sofia Imber v. CBI-TDB Union Bancaire Privee*,
996 F. Supp. 277, 289 (S.D.N.Y. 1998), does not explicitly consider whether
New York UCC § 3-404 provides an independent cause of action, and in any
event fails to distinguish the more recent federal precedent which holds to

common-law causes of action have not been abrogated by the
enactment of the UCC, a prerequisite to these claims is still
possession by a payee:

> It is true that, in creating a statutory right to
> bring a conversion action for payment over a forged
> indorsement at the time of the UCC's enactment, the
> Legislature did not intend to abrogate the payee's
> pre-Code common-law rights to sue in assumpsit, for
> money had and received or unjust enrichment. This
> does not help plaintiff, however. Plaintiff's action
> in quasi-contract, like its action for conversion
> under UCC 3-419(1)(c), must fail. The checks were
> never actually or constructively delivered to
> plaintiff. It, therefore, never acquired a property
> interest in them and cannot be said to have suffered a
> loss.

*Barclays*, 563 N.E.2d at 14 (dismissing equitable claims); *see
also Gallery Garage Management Corp. v. Chemical Bank*, 226
A.D.2d 305 (N.Y. App. Div. 1st Dep't 1996) (dismissed payee's
claim on standing grounds, explaining that pursuant to *Barclays*
"a named payee must have had actual or constructive possession
in order to sue a depositary bank on an instrument that the
payee claims was paid over a forged indorsement.")

---

the contrary. *See 2006 Frank Calandra, Jr. Irrevocable Trust v. Signature
Bank Corp.*, 2010 U.S. Dist. LEXIS 132755, at *7 (S.D.N.Y. Dec. 13, 2010)

Because the Plaintiff, who never had possession of the checks, therefore lacks standing as to Counts VI through IX, the claims are dismissed.

## Count X for Conspiracy is Dismissed Because Plaintiff Fails to Plead any Underlying Tort

Count X, which was previously dismissed in the May 25, 2011 Order, alleges a civil conspiracy between the Association and Northern Trust to "willfully and maliciously accept, wrongfully endorse, deposit, and convert checks made payable to the Foundation and to deprive the Foundation of the funds to which it is entitled." (FAC ¶ 149.)

Fatal to this claim, New York does not recognize an independent cause of action for conspiracy to commit a civil tort. *See Alexander & Alexander of New York, Inc. v. Fritzen*, 503 N.E.2d 102, 102 (N.Y. 1986) ("[A]s we long ago held, a mere conspiracy to commit a tort is never of itself a cause of action."); *Transit Mgt., LLC v. Watson Indus., Inc.*, 23 A.D.3d 1152, 1155 (N.Y. App. Div. 4th Dep't 2005) ("It is well established that New York does not recognize civil conspiracy as an independent tort.") (citations omitted). "Allegations of conspiracy are permitted only to connect the actions of separate

39

defendants with an otherwise actionable tort." *Transit Mgt.,*
*LLC,* 23 A.D.3d at 1155. Because the Foundation has failed to
state a cause of action for conversion or for any other
underlying tort, *see supra* at 35-39, the conspiracy claim is
dismissed as to both Defendants.

## Conclusion

For the foregoing reasons, Plaintiff's motion for
sanctions is denied, and Defendants' motion to dismiss is
granted in its entirety.


It is so ordered.


**New York, NY**
**March / 4, 2014**

_____
ROBERT W. SWEET
U.S.D.J.